BERNARD GOUGH                                    *      IN THE
5804 Eurich Road
Baltimore, Maryland 21206                        *      UNITED STATES

       Plaintiff,                         *      DISTRICT COURT
   v.
                                                 *      FOR THE DISTRICT
OFFICER JEMELL RAYAM
2110 East Center Street                          *      OF MARYLAND
Rochester, MN 55904
Individually and as a police officer for         *
BALTIMORE CITY POLICE DEPT.
                                                 *      Case No.:
    and
                                                 *
OFFICER JONATHAN SIMPSON
601 E. Fayette St.                               *
Baltimore, Maryland 21202
Individually and as a police officer for         *
BALTIMORE CITY POLICE DEPT.
                                                 *
    and
                                                 *
BALTIMORE POLICE DEPT.
S/O: Michael Harrison, Police Commissioner       *
601 E. Fayette Street
Baltimore, Maryland 21202                        *

    and                                      *

MAJOR NATHAN WARFIELD                            *
601 E. Fayette Street
Baltimore, Maryland 21202                        *
Individually and as a Major for
BALTIMORE CITY POLICE DEPT.                      *

    and                                      *

COMM. FREDERICK BEALEFELD                        *
601 E. Fayette Street
Baltimore, Maryland 21202                        *
Individually and Dep. Police Commissioner for
BALTIMORE CITY POLICE DEPT.                      *

      Defendants.                         *
*       *       *       *       *       *       *       *       *       *       *       *       *

## COMPLAINT AND JURY TRIAL DEMAND

**NOW COMES** the Plaintiff, Bernard Gough (hereinafter "Mr. Gough," "Plaintiff," or "Plaintiff Gough"), by and through his attorneys, Howard A. Miliman, Esquire, Mandy L. Miliman, Esquire, and D'Alesandro & Miliman, P.A., and files this Complaint against the above-named Defendants, and in support thereof states as follows:

## INTRODUCTION

In this action, Plaintiff Gough seeks compensatory and punitive damages as well as other relief pursuant to 42 U.S.C. §1983, 42 U.S.C. §1985, the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law, for the unconstitutional and unlawful conduct of the Defendants. The actions of the Defendants as detailed herein deprived Plaintiff Gough of his civil rights and constitute egregious and objectively unreasonable violation of numerous rights under the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland law. Numerous Defendants participated in Plaintiff Gough being grievously injured, falsely arrested, wrongfully convicted, and subsequently imprisoned. Said Defendants then conspired to cover up their actions against Plaintiff. The remaining Defendants were aware of the custom of violating citizens' civil rights, and condoned, or otherwise failed to adequately train and supervise, such actions. In this instance of carrying out the custom, Plaintiff Gough had his civil rights violated, and, as a result, suffered permanent injury that has, does, and will affect him every day of his life.

## PARTIES

1.      Plaintiff, Bernard Gough, is a 40-year-old, African American citizen of the United States residing at 5804 Eurich Road, Baltimore, MD 21206.

2.      Defendant Officer Jemell Rayam (hereinafter "Officer Rayam," "Defendant Rayam," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore Police Department and acting in the course and scope of his official duties as a Baltimore Police Officer. Defendant Rayam was on duty when he participated in the excessive force, false arrest, malicious prosecution, false imprisonment, and wrongful conviction of Mr. Gough. Defendant Rayam is sued in his individual and official capacity under 42 U.S.C. §1983, 42 U.S.C. §1985, the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

3.      Defendant Officer Jonathan Simpson (hereinafter "Officer Simpson," "Defendant Simpson," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore Police Department and acting in the course and scope of his official duties as a Baltimore Police Officer. Defendant Simpson was on duty when he participated in the excessive force, false arrest, malicious prosecution, false imprisonment, and wrongful conviction of Mr. Gough. Defendant Simpson is sued in his individual and official capacity under 42 U.S.C. §1983, 42 U.S.C. §1985, the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

4.      Defendant Baltimore Police Department (hereinafter "BPD") is an agency of the State of Maryland. The BPD is responsible for providing police and law enforcement services for the City of Baltimore, and for investigating crimes that occur within the City. The BPD has its principal offices at 601 E. Fayette Street, Baltimore, MD 21202. Upon information and belief, the BPD reposed decision-making authority regarding police officer training and supervision. The BPD is a local agency for the purposes of the Local Government Tort Claims Act.

5.      Though it has long been noted by the courts that Defendant BPD is customarily a state agency rather than an agency of a county or municipality, thereby enjoying the protection of sovereign immunity, this Court has determined that Defendant BPD may be sued directly under 42 U.S.C. §1983. *See Hector v. Weglein*, 558 F. Supp. 194, 197-99 (D. Md. 1982), and *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 547-48 (D. Md. 2003). In fact, this Court ruled that Defendant BPD is "so connected with the government of Baltimore City to such an extent as to prevent the Police Department from asserting an Eleventh Amendment immunity." *Chin*, 241 F. Supp. 2d at 548.

6.      Regarding Plaintiff's state claims, Plaintiff sues BPD pursuant to 42 U.S.C. §1983, §1985, and §1988 because individual Defendants were acting under color of state law when they deprived Plaintiff of his civil rights under the United States Constitution.

7.      Defendant BPD conspired with the Defendant Officers to encourage, tolerate, ratify, and be deliberately indifferent to the need for more or different training, supervision, investigation, or discipline, as well as the following patterns, practices, and customs:

a.      The use of unreasonable force, excessive force and unlawful arrest by police officers;

b.      The improper exercise of police powers, including, but not limited to, the unreasonable use of force, the excessive use of force, unlawful arrest, death/injury while in custody, violations of citizens' constitutional rights, and racially motivated acts by its police officers;

c.      The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

d.      The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior or simultaneous internal complaints of misconduct;

e.      Police officers' use of police authority to employ the use of excessive force and unlawful arrest, unlawful search and seizure, and/or to achieve ends not reasonably related to their police duties; and

f.      The failure of police officers to follow established policies, procedures, directives and instructions regarding the arrest, detention, pursuit, duty to rescue, duty to prevent unnecessary bodily harm, use of force, and arrest powers under such circumstances as presented herein.

8.      Prior to October 9, 2007, Defendant BPD had actual or constructive knowledge that Defendant Rayam, Defendant Simpson, and other police officers of Defendant BPD were engaged in pervasive conduct that posed unreasonable risk of constitutional injury to residents and citizens within the jurisdiction of the City of Baltimore, yet failed to take appropriate and adequate remedial action against these police officers to prevent the injuries suffered by the Plaintiff. Defendant BPD implemented a policy and custom of condonation or deliberate indifference to police misconduct, had a custom or policy of failing to train its officers adequately, and failed to adequately supervise Defendants Rayam and Simpson.

9.      Defendant BPD's directives and failure to take remedial actions against the pervasive and unreasonable misconduct of these police officers was a proximate cause of Plaintiff's injuries.

10.     Defendant Major Nathan Warfield (hereinafter "Major Warfield" and "Defendant Warfield") is an adult male and, at all times relevant hereto, was employed by Defendant BPD as a Major in Defendant BPD's Internal Affairs Division. Defendant Warfield is sued in his individual and professional capacity under 42 U.S.C. §1983 and §1985.

11.     Defendant Warfield, through his official capacity as a Major in Defendant BPD's Internal Affairs Division, implemented a policy or custom of condonation or deliberate indifference to the constitutional violations committed by Defendant BPD officers, and had a custom or policy of failing to investigate and adequately discipline Defendant BPD officers.

12.     Defendant Warfield, in his personal and official capacity, failed to adequately investigate and discipline Defendants Rayam, Simpson, and other police officers of Defendant BPD.

13.     Defendant Warfield's supervisory acts and failures to act are attributable as Defendant BPD's direct acts and failures to act. Because Defendant Warfield was a Major in Defendant BPD's Internal Affairs Division on October 9, 2007, his acts or failures to act reflected official policy and practice for Defendant BPD, or the failure to correctly implement the same.

14.     Defendant Police Commissioner Frederick Bealefeld (hereinafter "Commissioner Bealefeld" and "Defendant Bealefeld") is an adult male and, at all times relevant hereto, was employed by Defendant BPD as Police Commissioner. Defendant Bealefeld is sued in his individual and official capacity under 42 U.S.C. §1983 and §1985.

15.     Defendant Bealefeld, through his official capacity as Police Commissioner of Defendant BPD, implemented a policy or custom of condonation or deliberate indifference to the constitutional violations committed by Defendant BPD officers, and had a custom or policy of failing to train Defendant BPD officers adequately.

16.     Defendant Bealefeld actively coached the officers of Defendant BPD's Gun Trace Task Force and other officers as to testifying in court when confronted with allegations of illegal activity in order to further shield their actions from discovery.

17.     Defendant Bealefeld, in his personal and official capacity, failed to adequately supervise Defendants Rayam, Simpson, and other police officers of Defendant BPD.

18.     Defendant Bealefeld's supervisory acts and failures to act are attributable as Defendant BPD's direct acts and failures to act. Because Defendant Bealefeld was the Police Commissioner on October 9, 2007, his acts or failures to act reflected official policy and practice for Defendant BPD or the failure to correctly implement the same.

19.     At all times herein, the actions and practices of the Defendants, and those acting at their direction, were performed under the color of state law, and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

20.     Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

21.     This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution and asserts claims for relief 42 U.S.C. §1983 and §1985, as well as claims for relief under Article 24 of the Maryland Constitution and Maryland State Law.

22.     Jurisdiction is invoked pursuant to 28 U.S.C. §1331 and §1343. This Court also has supplemental jurisdiction over the state law claims against the individual Defendants pursuant to 28 U.S.C. §1367.

23.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) inasmuch as Plaintiff's causes of action arose in the District of Maryland, and at all times relevant to this action all the Defendants were found in this District.

## FACTUAL ALLEGATIONS

24.     Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

25.     At all times relevant hereto, Defendants Rayam and Simpson were employed as officers of Defendant Baltimore City Police Department.

26.     At all times relevant hereto, Defendant Warfield was employed by Defendant BPD as a Major in the Baltimore City Police Internal Affairs Division.

27.     At all times relevant hereto, Defendant Bealefeld was employed by Defendant BPD as Police Commissioner.

28.     At all times during the course of these events, Defendant BPD had advance notice that members of its force engaged in illegal acts while in the course of their employment. This notice included, but was not limited to, officers planting evidence, stealing money from citizens, and using excessive force.

29.     Defendants BPD implemented a policy or custom of condonation or deliberate indifference to the use of excessive force, fabricated evidence, wrongful arrest, illegal search and seizures, malicious prosecution, and misuse of police powers by Defendant BPD officers.

30.     Defendant BPD failed to adequately train and supervise Defendant BPD's officers in proper arrest, use of force, and use of police powers.

### United States Department of Justice Investigation of
### Baltimore Police Department

31.     On or about August 10, 2016, the United States Department of Justice ("DOJ") announced in a 163 page report the outcome of the Department's investigation of Defendant BPD. **Exhibit 1**.

8

32.     The Department of Justice concluded that "there is reasonable cause to believe that BPD engages in a pattern or practice of conduct that violates the Constitution or federal law. BPD engages in a pattern or practice of:

a.      Making unconstitutional stops, searches, and arrest;

b.      Using enforcement strategies that produce severe and unjustified disparities in the rates of stops, searches and arrests of African Americans'

c.      Using excessive force; and

d.      Retaliating against people engaging in constitutionally-protected expression." *Id.* at 3.

33.     Regarding discrimination against African Americans, the report specifically found that "racial disparities in BPD's arrests are most pronounced for highly discretionary offenses: African Americans accounted for 91 percent of the 1,800 people charged solely with 'failure to obey' or 'trespassing;' 89 percent of the 1,350 charges for making a false statement to an officer; and 84 percent of the 6,500 people arrested for 'disorderly conduct.'" *Id.* at 7.

34.     Regarding BPD's training of its officers, the report specifically found that "BPD's inadequate policies and training contribute to the Department's pattern or practice of constitutional violations." *Id.* at 129.

35.     Additionally, regarding BPD's supervision of its officers, the report states, "Serious deficiencies in BPD's supervision of its enforcement activities, including through data collection and analysis, contribute to the Department's failure to identify and correct unconstitutional policing." *Id.* at 134. Specifically, "[r]elated to BPD's failure to supervise its officers and collect data on their activities, the Department lacks an adequate early

intervention system, or EIS, to identify officers based on patterns in their enforcement activities, complaints, and other criteria." *Id.* at 135.

36.     Finally, the report made a number of findings regarding BPD's failure to hold officers accountable for misconduct, noting that "BPD relies on deficient accountability systems that fail to curb unconstitutional policing." *Id.* at 139.

## The Facts of Plaintiff's Case

37.     On or about October 9, 2007, at approximately 7:30 p.m., Plaintiff was the driver of a blue vehicle traveling on Woodmont Avenue in Baltimore City, Maryland. At all times relevant herein, a friend of Plaintiff was a passenger in the vehicle, seated in the front passenger seat.

38.     On the same date and at the same time above mentioned, Defendants Rayam and Simpson were on patrol in plain clothes. According to Defendant Officers, while on patrol that evening, they received a K.G.A. broadcast report of a stolen red vehicle in the area.

39.     As Plaintiff slowed down for a speed bump, he noticed in his rear-view mirror a man running toward his vehicle while aiming a gun directly at the vehicle.

40.     As it turned out, the man with the gun was Defendant Rayam. At no time did Defendant Rayam or Defendant Simpson ever activate any emergency lights on any vehicle, identify themselves as police officers, order Plaintiff to stop, or attempt to conduct a lawful traffic stop of Plaintiff before Defendant Rayam began running toward Plaintiff's vehicle with a gun.

41.     Given that Plaintiff was slowing down his vehicle when he noticed a man, in regular clothes, running toward his vehicle with a gun, instinctively, Plaintiff ducked.

42.     Defendant Rayam was able to catch up to Plaintiff's vehicle. When he did so, without any warning or justification, Defendant Rayam fired a shot into the driver's side window of Plaintiff's vehicle. The bullet went through Plaintiff's neck, exited through his mouth, and lodged into his right arm. The force of the gunshot immediately knocked out all teeth in the right side of Plaintiff's mouth.

43.     Plaintiff lost consciousness, causing the vehicle to crash. All events were witnessed by the passenger in Plaintiff's front seat.

44.     After grievously shooting Plaintiff, Defendant Rayam did not call for help. He did not render aid. Instead, he ran around the corner and disappeared for a total of twelve (12) minutes, all while Plaintiff remained unconscious and nearly bleeding to death in his vehicle.

45.     At no time did either Defendant Rayam or Defendant Simpson render aid to the Plaintiff.

46.     When Defendant Rayam finally returned to the scene, he and Defendant Simpson had a discussion prior to calling for help. When help eventually arrived, Plaintiff was transported to the hospital, where he was pronounced dead on arrival.

47.     Fortunately, Plaintiff was resuscitated.

48.     When Plaintiff finally awoke, he discovered that the bullet from the gunshot had not only knocked out half his teeth, but had also hit his voice box, rendering him unable to speak. As a result of the gunshot, the doctors had performed a tracheotomy.

49.     The gunshot further shattered Plaintiff's jaw, necessitating the wiring shut of his mouth and the placement of a metal plate into his face.

50.     Although Plaintiff had not committed any crime, Defendants Rayam and Simpson charged Plaintiff with ten counts arising out of the incident. In order to do so,

Defendants Rayam and Simpson lied in their Application for Statement of Charges. A copy of the Application for Statement of Charges is attached hereto and incorporated herein as **Exhibit 2**.

51.     According to the Application for Statement of Charges, Defendants Simpson and Rayam falsely stated, under oath, that upon conducting a lawful traffic stop of Plaintiff's vehicle (which they alleged was reported stolen, although it was not, and although it did not match the description of the reportedly stolen car), Plaintiff attempted to pull away and dragged Defendant Rayam down the street. The Statement of Charges makes no mention of how Defendant Rayam was able to shoot Plaintiff in the neck while being dragged down the street. In fact, the Application makes no mention at all as to how the shooting occurred.

52.     Further, despite swearing that he was dragged down the street by a moving vehicle, Defendant Rayam was not injured.

53.     When Plaintiff awoke in the hospital to the discovery that he had a tracheotomy and that his mouth was wired shut, he was shackled to his hospital bed by handcuffs. A correctional officer sat next to his bed, guarding him.

54.     Despite his grave condition, police officers of the BPD did not immediately allow Plaintiff's family to visit him. When Plaintiff's father was finally allowed in the room, Plaintiff pointed to the officers in an attempt to communicate to his father what had happened. Said officers immediately forced Plaintiff's father to leave.

55.     Given the facts set forth by Defendants Rayam and Simpson in their Application for Statement of Charges, Plaintiff's bail was set at $400,000. After one week in the hospital, Plaintiff was transported to a Department of Corrections medical facility, where he remained incarcerated, wheelchair-bound, for approximately one month. With the help of

an attorney, Plaintiff's bail was lowered to $200,000, which he was able to post with the help of family.

56.     For nearly one (1) year, Plaintiff received extensive medical treatment, including, but not limited to, the re-wiring of his mouth, constant maintenance of the tracheotomy, and rehabilitation to re-learn how to walk.

57.     Throughout this time, Plaintiff appeared in court several times for the criminal case against him. Defendant Rayam appeared at every hearing. On multiple occasions inside the courtroom, Defendant Rayam winked at Plaintiff.

58.     Plaintiff's criminal defense attorney, Donald Daneman, told the true facts of the case to the Baltimore City State's Attorney's Office in order to help Plaintiff avoid a wrongful conviction. Mr. Daneman further pointed out to the State's Attorney's Office the glaring flaws of the State's case. Nonetheless, the State, with Defendant Rayam's persistence, pursued the case.

59.     Ultimately, Plaintiff accepted a plea deal in order to avoid the risk of being convicted of a felony, and facing significant jail time, due to Defendant Officers' intent to falsely testify against him.

60.     After being shot in the neck for no reason at all, Plaintiff served eighteen (18) months as a result of the Defendant Officers' false arrest, charges, and malicious prosecution.

61.     In addition to the above, Plaintiff incurred significant medical bills and has suffered catastrophic damages due to the Defendants' actions, including, but not limited to, the following:

a.   Plaintiff lost 80 pounds during the eight (8) months when his mouth was wired shut;

b.   Plaintiff lost all teeth on the right side of his mouth;

c.   Plaintiff has, and always will have, a metal plate in his face;

d.   The placement of a metal plate in Plaintiff's face forever prevents the replacement of all teeth on the right side of his mouth;

e.   In addition to losing half his teeth on a permanent basis, Plaintiff has a hole on the floor of his mouth, which renders eating extremely difficult;

f.   Plaintiff has suffered permanent nerve damage;

g.   Plaintiff's ability to work has been severely limited; and

h.   Plaintiff is in constant pain.

62.   On March 1, 2017, the indictments of seven (7) BPD police officers—all members of the Gun Trace Task Force—became public. The indictments described a pervasive pattern of unchecked police misconduct. Defendant Rayam was included in the indictment.

63.   On May 28, 2019, Defendant Rayam was sentenced to twelve (12) years in prison.

64.   On or about October 7, 2019, the State's Attorney for Baltimore City, Marilyn Mosby, filed a Motion to Vacate the Plaintiff's conviction arising out of the October 9, 2007 incident. A copy of that Motion is attached hereto and incorporated herein as **Exhibit 3**.

65.   On November 27, 2019, that Motion was granted. A copy of that Order is attached hereto and incorporated herein as **Exhibit 4**.

66.   Plaintiff has provided proper notice of his intent to pursue a claim under the Local Government Tort Claims Act.

67.     At all times alleged herein, the Defendant Officers were acting under the color of state law in the course and scope of their duties as BPD officers by engaging in the conduct set forth above.

68.     At all times alleged herein, the Defendant Officers acted for and on behalf of the BPD with the power and authority vested in them as officers, agents, and employees of the BPD, and incident to the pursuit of their duties as officers, employees and agents of the BPD.

69.     The Defendant Officers' conduct as alleged herein was anything but uncommon within the BPD in the years preceding the outrageous assault and arrest of Plaintiff. As detailed herein, and as set forth in **Exhibit 1**, at the time the Defendant Officers arrested and assaulted Mr. Gough, BPD routinely violated civilians' Fourth Amendment rights by arresting them without the requisite probable cause and employing excessive force in the course of performing arrests.

<u>**COUNT I**</u>
<u>**(U.S.C. §1983, Excessive Force, Defendant Rayam)**</u>

70.     Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

71.     On October 9, 2007, while purportedly investigating a report of a stolen vehicle and allegedly conducting a traffic stop, the Defendant shot Plaintiff in the neck despite lacking any reasonable, justifiable, or legal basis for doing so.

72.     Mr. Gough suffered severe physical injury, permanent disfigurement, pain, and impairment.

73.     No reasonable officer would have believed such force was justified in the circumstances, as there was no reasonable basis to believe Mr. Gough was a threat to the safety of the Defendant Officers, himself, or anyone nearby.

74.     By shooting Mr. Gough in the neck and then having him arrested without any basis, the Defendant Officers violated Mr. Gough's right to be free from unreasonable seizures as provided by the Fourth Amendment to the United States Constitution.

75.     At the time the Defendant engaged in the unlawful conduct delineated in this Count, he was acting by virtue of his authority as a BPD officer and within the scope of his employment. Accordingly, the Defendant acted under color of state law in assaulting Mr. Gough to secure his arrest.

76.     As a direct result of the tortious conduct set forth in this Count, Mr. Gough's physical liberty was restrained and he suffered severe physical and mental injuries which have required and will continue to require extensive medical care. Moreover, as a direct result of the Defendant's unlawful use of force, Mr. Gough experienced and continues to experience physical pain and suffering, permanent disfigurement, as well as significant emotional distress.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## COUNT I
### (U.S.C. §1983, Gross Negligence, Defendants Rayam and Simpson)

77.     Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

78.     By failing to render aid or call for help after grievously wounding Plaintiff, Defendants engaged in intentional, willful and wanton misconduct with a reckless disregard for human life or the rights of the Plaintiff.

79.     The Defendants intentionally inflicted bodily injury on Plaintiff, put Plaintiff in fear of immediate harm, and acted with utter indifference as to the rights of Plaintiff, acting as if the Plaintiff's rights did not exist.

80.     The Defendants' actions were improperly motivated by ill will and actual malice, resulting in injuries.

81.     Defendants intended to cause substantial and permanent physical injury or imprisonment to Plaintiff when they assaulted him unmercifully and then failed to render any aid.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## COUNT III
**(Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officers Rayam and Simpson)**

82.     Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

83.     At all times relevant to this Complaint, Defendants Rayam and Simpson were acting under the color of state law as officers employed by Defendant BPD and were acting within the scope of their employment.

84.     The Plaintiff was unlawfully arrested, detained, and imprisoned by the Defendant Officers. Said Defendants did not have a warrant or probable cause to believe that the Plaintiff was involved in any criminal activity.

85.     The act of arresting and detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

86.     The acts committed by Defendant Officers were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiff's constitutional rights and would cause harm to Plaintiff.

87.     As a result of the Defendant's conduct and actions, Mr. Gough suffered, and will continue to suffer, severe physical pain, permanent disfigurement, mental anguish, and other related damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## COUNT IV
**(False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officers Rayam and Simpson)**

88.     Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

89.     At all times relevant to this Complaint, Defendants Rayam and Simpson were acting under the color of state law as officers employed by Defendant BPD and were acting within the scope of their employment.

90.     By detaining Plaintiff and denying the Plaintiff's liberty, knowingly without legal justification, the police officers acted with ill will. There was no proper motivation or legal justification to warrant the false imprisonment of Plaintiff.

91.     Plaintiff was detained while in the hospital, held for one month with a $400,000 bail, and subsequently imprisoned for a period of eighteen (18) months as a result of the Defendants' misconduct.

92.     Such action caused Mr. Gough to be unlawfully deprived of his liberty.

93.     Defendants Rayam and Simpson participated in detaining and arresting Mr. Gough.

94.     As a result of the actions of Defendants Rayam and Simpson, Plaintiff suffered damage by being held against his will for an extended period of time without consent or legal justification.

95.     At all times herein, the Defendant acted with ill will, without legal justification, and with improper motivation, to wit, covering up the illegal shooting and arrest of an innocent citizen.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

### COUNT V
### (Malicious Prosecution Pursuant to U.SC. §1983 and the 4th and 14th Amendments – Officers Rayam and Simpson)

96.     Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

97.     At all times relevant to this Complaint, Defendants Rayam and Simpson were acting under the color of state law as Officers employed by Defendant BPD and were acting within the scope of their employment.

98.     Defendant Officers acted intentionally and recklessly in their dealings with Plaintiff as stated herein

99.     Defendant Officers, by arresting and charging Plaintiff, instituted a criminal proceeding against the Plaintiff.

100.    Criminal proceedings against Plaintiff for assault finally terminated on November 27, 2019, when his conviction was vacated at the request of the State of Maryland.

101.    By swearing a false affidavit in support of the arrest, which relied on fabricated evidence, Defendant Officers acted with malice and without probable cause.

102.    Defendant Officers instituted the prosecution with malice or a purpose other than bringing Plaintiff to justice.

103.    As a direct result of the malicious prosecution, Plaintiff incurred attorney's fees, spent eighteen (18) months in prison for a crime he did not commit, suffered, and continues to suffer, severe emotional distress, and incurred other damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT VI
### (Violation of Maryland Declaration of Rights – Officers Rayam and Simpson)

104.    Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

105.    At all times relevant to this Complaint, Defendants Rayam and Simpson were acting under the color of state law as officers employed by Defendant BPD.

106.    Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

107.     Plaintiff incorporates all allegations, including those in the aforementioned claims of excessive force, gross negligence, false imprisonment, false arrest, and malicious prosecution, under this claim, and reiterates that Plaintiff has contended violations of Article 24 throughout this Complaint.

108.     Plaintiff further states that the allegations alleged were within the scope of Defendants' employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendants under Article 24.

109.     Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

110.     This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT VII
### (Civil Conspiracy Pursuant to 42 U.S.C. §1983, 1985– Defendants Rayam and Simpson)

111.     Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

112.     At all times pertinent to the complaint, Defendants Rayam and Simpson, acting within the scope of their employment and under color of law, agreed amongst themselves and with other individuals of Defendant BPD to act in concert to deprive Plaintiff of his constitutional rights and equal protection of the laws.

113.    In furtherance of their conspiracy, Defendants Rayam and Simpson engaged in and facilitated numerous unlawful acts, including, but not limited to, discharging a firearm at Plaintiff when he did not pose a threat, fabricating charges against Plaintiff, maliciously prosecuting Plaintiff, and were otherwise willful participants in the joint activity.

114.    As a result of this civil conspiracy, Plaintiff was subject to excessive force, arrest, imprisonment, and substantial injury, including, but not limited to, permanent injury and loss of liberty.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## COUNT VIII
### (Civil Conspiracy Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)

115.    Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

116.    At all times pertinent to the complaint, Defendant BPD entered in to a civil conspiracy with the named Defendant Officers to facilitate and enable members of the Defendant BPD's force to hide the unit's use of excessive force, illegal arrest, fabrication of charges, and malicious prosecution on the streets of Baltimore City.

117.    These actions include, but are not limited to, making material misrepresentations of fact or omissions surrounding their excessive force against Plaintiff, including, but not limited to, using their authority to cover up the wrongful nature of their conduct.

118.     Additionally, BPD failed to conduct a meaningful Internal Affairs investigation despite being confronted with allegations that Officer Defendants were engaging in a pattern of pervasive and unconstitutional misconduct, continuing to employ the Officer Defendants after findings of illegal activity were made, and failing to reprimand the officers for conducting such illegal activity while performing their duties as officers of the BPD.

119.     As a result of this civil conspiracy, Plaintiff was subject to excessive force, arrest, imprisonment, and substantial injury, including, but not limited to, permanent injury and loss of liberty.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

**COUNT IX**
**(Unconstitutional Custom or Practice of Unlawful Arrest and Improper Use of Police Powers Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)**

120.     Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

121.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise its law enforcement officers in the proper use of force, arrest, and police powers.

122.     As alleged herein, Defendants Rayam, Simpson, and other officers of the Baltimore City Police Department, and thereby, Defendant BPD, engaged in a pattern, practice, policy, or custom of allowing, enabling, and facilitating Defendant BPD officers to

use excessive force, conduct unlawful stops, searches, and seizures, and has permitted officers to further improperly use of police powers.

123.    After indictments were unsealed in the United States District Court for the District of Maryland, Plaintiff became aware that Defendant Rayam had a long documented disciplinary record of violating the civil rights of Baltimore City residents including, but not limited to, an overwhelming number of Internal Affairs complaints, in addition to a number of settled lawsuits alleging this conduct by Defendant Rayam. The policy and practice of returning these Officers to their normal employment with the BPD without adequate training and supervision made the violation of Plaintiff and other citizens' rights not a mere possibility, but a certainty.

124.    Upon information and belief, Defendant BPD's officers have been allowed, enabled, and facilitated in engaging in unlawful practices absent proper supervision or consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

125.    As alleged herein, Defendant BPD entered into a civil conspiracy with members of its department to hide the force's use of illegal arrest, excessive force, and other unconstitutional violations on the streets of Baltimore City.

126.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of the Defendant BPD.

127.    Upon information and belief, Defendant BPD has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and, as such, has further ratified

the Officers' improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

128.    Defendant BPD's failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## COUNT X
### (Inadequate Training Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)

129.    Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

130.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing, enabling, and facilitating its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

131.    As alleged herein, Defendant Officers, officers of the Gun Trace Task Force, and thereby, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing BPD officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly train Defendant BPD officers.

132.    After indictments were unsealed in the United States District Court for the District of Maryland, Plaintiff became aware that Officer Defendants had a long documented

disciplinary record of violating the civil rights of Baltimore City residents including, but not limited to, an overwhelming number of Internal Affairs complaints, in addition to a number of settled lawsuits alleging this conduct by Defendant Rayam. The policy and practice of returning these Officers to their normal employment with the BPD without adequate training and supervision made the violation of Plaintiff and other citizens' rights not a mere possibility, but a certainty.

133.   At all relevant times herein, Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training of all employees, agents, and deputies under its direction and control.

134.   Upon information and belief, Defendant BPD's officers have been allowed to engage in unlawful practices absent proper training, including excessive force, unlawful arrest, illegal search and seizure, and improper use of police powers.

135.   It was readily foreseeable and highly predictable that failing to properly train Defendant BPD's officers in the proper application of force would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein, and Defendant BPD was indifferent to same.

136.   As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately train its officers in dealing in proper arrest, search and seizure and use of police powers.

137.     As a direct and proximate result of Defendant BPD's failure adequately train its officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## COUNT XI
### (Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)

138.     Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

139.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

140.     After indictments were unsealed in the United States District Court for the District of Maryland, Plaintiff became aware that Defendant Rayam had a long documented disciplinary record of violating the civil rights of Baltimore City residents including, but not limited to, an overwhelming number of Internal Affairs complaints, in addition to a number of settled lawsuits alleging this conduct by Defendant Rayam. The policy and practice of returning these Officers to their normal employment with the BPD without adequate training and supervision made the violation of Plaintiff and other citizens' rights not a mere possibility, but a certainty.

27

141.    At all relevant times, Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under its direction and control.

142.    Upon information and belief, the supervision provided and/or required by Defendant BPD regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant BPD, directly and through its employees, agents and deputies, failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

143.    As alleged herein, Defendants Rayam, Simpson, and other officers of its force, and thereby, Defendant BPD have engaged in a pattern, practice, policy, or custom of allowing BPD officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise Defendant BPD officers in the proper arrest procedures and use of police powers.

144.    It was readily foreseeable and highly predictable that failing to properly supervise Defendant BPD's officers in the proper arrest procedures and use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant BPD was indifferent to same.

145.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately supervise its officers.

146.   As a direct and proximate result of Defendant BPD's failure to adequately supervise its officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

147.   Defendant BPD's failure to properly supervise its officers and employees was tantamount to deliberate indifference.

148.   Defendant BPD's failure to adequately supervise further confirms the aforementioned pattern and practice.

149.   As alleged herein, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to fabricate evidence, use excessive force, conduct illegal arrests, searches, and seizures, and improperly use police powers.

150.   Defendant BPD was aware, and should have foreseen, that Defendant BPD's officers would enable situations as that presented by Plaintiff.

151.   Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant BPD and have been similarly mishandled by Defendant BPD as alleged herein.

152.   As alleged herein, Defendant BPD entered in to a civil conspiracy with the members of its force to hide the unit's use of excessive force, illegal arrest, and fabrication of charges on the streets of Baltimore City.

153.   Defendant BPD's improper handling of incidents of excessive force, planted evidence, illegal arrest, and improper use of police powers committed by Defendant BPD's officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

154.     As a direct and proximate result of Defendant BPD's deliberate indifference to the supervision of its officers and employees as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## COUNT XII
**(Unconstitutional Custom or Practice of Excessive Force, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985– Defendant Warfield, in his personal and official capacity)**

155.     Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

156.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Warfield is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise his law enforcement officers in the proper arrest procedures and use of police powers.

157.     As alleged herein, Defendant Warfield has engaged in a pattern, practice, policy, or custom of allowing the named Officer Defendants to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

158.     As alleged herein, Defendant Warfield was employed by Defendant BPD as a Major of the Internal Affairs Division.

159.   Upon information and belief, Defendant Warfield, through his lack of investigation into the officers despite numerous complaints of their illegal activity, permitted the named Officer Defendants to engage in unlawful practices absent proper supervision or consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

160.   As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of Defendant Warfield.

161.   Upon information and belief, Defendant Warfield has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

162.   Upon information and belief, Defendant Warfield failed to discipline any of the Officers, while acting in his official capacity as a Major of the Internal Affairs Division despite a long record of complaints made against Defendant Rayam.

163.   Defendant Warfield's failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## COUNT XIII
### (Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985– Defendant Warfield, in his personal and official capacity)

164.    Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

165.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Warfield is prohibited from allowing the named Officer Defendants to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

166.    At all relevant times, Defendant Warfield had an obligation to ensure that the named Officer Defendants exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under his direction and control.

167.    Upon information and belief, the supervision provided and/or required by Defendant Warfield regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant Warfield failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

168.    Prior to the events involving Plaintiff, Defendant Warfield, as Major of Internal Affairs, knew or should have known of the nature of Officer Defendants' systemic civil rights violations based on the number of Internal Affairs complaints alleged against the Officer Defendants.

169.    As alleged herein, Defendants Rayam, Simpson, and other officers of Baltimore Police Department, and thereby, Defendant Warfield has engaged in a pattern, practice,

policy, or custom of allowing the named Defendant Officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise the named Officer Defendants in the proper arrest procedures and use of police powers.

170.   It was readily foreseeable and highly predictable that failing to properly supervise the named Defendant Officers in the proper arrest procedures and use of police powers, including failing to investigate and take remedial actions for improper police actions, would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant Warfield was indifferent to same.

171.   As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Warfield's failure to adequately supervise his officers.

172.   As a direct and proximate result of Defendant Warfield's failure to adequately supervise his officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

173.   Defendant Warfield's failure to properly supervise Defendant BPD's officers was tantamount to deliberate indifference.

174.   Defendant Warfield's failure to adequately supervise further confirms the aforementioned pattern and practice.

175.   As alleged herein, Defendant Warfield has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to plant evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

176.    Defendant Warfield was aware, and should have foreseen, that the named Officer Defendants would confront situations as that presented by Plaintiff.

177.    Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant Warfield and have been similarly mishandled by Defendant Warfield as alleged herein.

178.    Defendant Warfield's improper handling of allegations of planted evidence, illegal arrest and improper use of police powers committed by the named Officer Defendants such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

179.    As a direct and proximate result of Defendant Warfield's deliberate indifference to the supervision of Defendant BPD's officers as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## COUNT XIV
**(Unconstitutional Custom or Practice of Excessive Force, Unlawful Arrest, and Improper Use of Police Powers Pursuant to 42 U.S.C. §1983, 1985– Defendant Bealefeld, in his personal and official capacity)**

180.    Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

181.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Bealefeld is prohibited from allowing his officers to engage in a

pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise his law enforcement officers in the proper arrest procedures and use of police powers.

182.    As alleged herein, Defendant Bealefeld has engaged in a pattern, practice, policy, or custom of allowing the named Defendant Officers, and others, to conduct excessive force, unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to further improperly use police powers.

183.    As alleged herein, Defendant Bealefeld was employed by Defendant BPD as the Police Commissioner.

184.    Upon information and belief, Defendant Bealefeld, through his lack of investigation into the officers despite numerous complaints of their illegal activity, permitted the named Defendant Officers to engage in unlawful practices absent proper supervision or consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

185.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of Defendant Bealefeld.

186.    Upon information and belief, Defendant Bealefeld has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

187.    Upon information and belief, Defendant Bealefeld failed to discipline any of the officers, while acting in his official capacity as a Police Commissioner.

188.    Defendant Bealefeld's failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## COUNT XV
**(Inadequate Training Pursuant to 42 U.S.C. §1983, 1985– Defendant Bealefeld, in his personal and official capacity)**

189.    Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth herein.

190.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Bealefeld is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

191.    As alleged herein, Defendant Bealefeld has engaged in a pattern, practice, policy, or custom of allowing named Defendant Officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly train Defendant BPD officers.

192.    At all relevant times Defendant Bealefeld, had an obligation exercise the same degree of care that a reasonable and prudent person would exercise in the same or similar

situation with respect to the training of all employees, agents, and deputies under its direction and control.

193.    Upon information and belief, Defendant Bealefeld permitted the named Defendant Officers to engage in unlawful practices absent proper training, including unlawful arrest, illegal search and seizure, and improper use of police powers.

194.    It was readily foreseeable and highly predictable that failing to properly train the named Defendant Officers in the proper use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein, and Defendant Bealefeld was indifferent to same.

195.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Bealefeld's failure to adequately train his officers in dealing in proper arrest procedures, search and seizure and use of police powers.

196.    As a direct and proximate result of Defendant Bealefeld's failure adequately train his officers, Plaintiff was injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## COUNT XVI
**(Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985– Defendant Bealefeld, in his personal and official capacity)**

197.    Mr. Gough re-alleges the foregoing paragraphs of this pleading as if fully set forth

herein.

198.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Bealefeld is prohibited from allowing the named Defendant Officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

199.    At all relevant times, Defendant Bealefeld had an obligation to ensure that the named Defendant Officers exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under his direction and control.

200.    Upon information and belief, the supervision provided and/or required by Defendant Bealefeld regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant Bealefeld failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

201.    As alleged herein, Defendants Rayam, Simpson, and other officers of the Baltimore Police Department, and thereby, Defendant Bealefeld has engaged in a pattern, practice, policy, or custom of allowing the named Officer Defendants to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise the named Defendant Officers in the proper arrest procedures and use of police powers.

202.    It was readily foreseeable and highly predictable that failing to properly supervise the named Defendant Officers in the proper arrest procedures and use of police

powers, including failing to investigate and take remedial actions for improper police actions, would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant Bealefeld was indifferent to same.

203.     As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Bealefeld's failure to adequately supervise his officers.

204.     As a direct and proximate result of Defendant Bealefeld's failure to adequately supervise his officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

205.     Defendant Bealefeld's failure to properly supervise Defendant BPD's officers was tantamount to deliberate indifference.

206.     Defendant Bealefeld's failure to adequately supervise further confirms the aforementioned pattern and practice.

207.     As alleged herein, Defendant Bealefeld has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to plant evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

208.     Defendant Bealefeld was aware, and should have foreseen, that the named Officer Defendants would confront situations as that presented by Plaintiff.

209.     Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant Bealefeld and have been similarly mishandled by Defendant Bealefeld as alleged herein.

210.    Defendant Bealefeld's improper handling of allegations of planted evidence, illegal arrest and improper use of police powers committed by the named Defendant Officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

211.    As a direct and proximate result of Defendant Bealefeld's deliberate indifference to the supervision of Defendant BPD's officers as herein detailed, Plaintiff has been injured, and continues to suffer injury.


WHEREFORE, the Plaintiff demands judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues of fact in this case.

Respectfully submitted,


__/s/_Mandy L. Miliman_____
Howard A. Miliman, #02547
Mandy L. Miliman, #29475
D'Alesandro & Miliman, P.A.
11 E. Lexington St., 5th Floor
Baltimore, MD 21202
(410) 727-0114
mmiliman@dmlawoffices.com